# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LYNN E. FELDMAN, Chapter 7 Trustee
of the Estate of Image Masters, Inc., *et al.*,

    Plaintiff/Appellant,

  v.

CHASE HOME FINANCE, *et al.*,

    Defendants/Appellees.

:
:
:
:
:
:
:
:
:
:
:
:

**CIVIL ACTION
NO. 10-1141**

## TRUSTEE/APPELLANT'S BRIEF IN SUPPORT OF APPEAL

Steven M. Coren (PA No. 32140)
Brian L. Watson (PA No. 84197)
KAUFMAN, COREN & RESS, P.C.
1717 Arch Street, Suite 3710
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170

Dated: June 4, 2010

*Special Counsel for Lynn E. Feldman,
Chapter 7 Trustee*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE BASIS OF APPELLATE JURISDICTION . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE ISSUES PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

APPLICABLE STANDARD OF APPELLATE REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

    The Complaints . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

I.    THE BANKRUPTCY COURT FAILED TO APPLY THE APPROPRIATE LAW OR STANDARDS APPLICABLE IN THE THIRD CIRCUIT TO THE FACTUAL ISSUES OF REASONABLY EQUIVALENT VALUE AND GOOD FAITH . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

    A.    Legal Standard for Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . 11

    B.    Reasonably Equivalent Value is a Factual Determination that Should Not be Made on a Motion to Dismiss . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

    C.    The Bankruptcy Court Completely Ignored the "Totality of the Circumstances" Standard that Courts in the Third Circuit Must Apply in Making This Factual Determination, Under Which Debtors Have Alleged, and Will Prove at Trial, That They Did Not Receive Reasonably Equivalent Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

    D.    The Bankruptcy Court Incorrectly Placed the Burden on the Trustee to Allege and Prove that Defendants Lacked Good Faith . . . . . . . . . . . . . 22

II.    THE BANKRUPTCY COURT MISAPPLIED AND MISCONSTRUED RULE 9 (b) AS REQUIRING PLAINTIFF TO ALLEGE FRAUDULENT INTENT WITH

i

PARTICULARITY AND TO ALLEGE AND PROVE THAT DEFENDANTS WERE KNOWINGLY IN ON THE UNDERLYING PONZI SCHEME . . . . . . 26

    A.    The Bankruptcy Court Erroneously Concluded that Rule 9 (b) Requires the Trustee to Allege Fraudulent Intent with Particularity and to Allege Defendants' Knowledge and/or Participation in the Underlying Fraud . . 26

    B.    The Bankruptcy Court Disregarded Numerous Decisions Holding that a Plaintiff's Allegation of a Ponzi Scheme Is Sufficient to Meet Actual Fraud Pleading Requirements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

III.    THE HOMEOWNERS ARE NOT NECESSARY PARTIES . . . . . . . . . . . . . . 32

    A.    Legal Standard Under Rule 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

    B.    As a Matter of Law, the Only Parties Necessary to Fraudulent Transfer Claims Are the Transferor and Transferees . . . . . . . . . . . . . . . . . . . . . . . 33

    C.    The Bankruptcy Court Failed to Determine Whether the Homeowners Have Asserted the Requisite Interest in the Subject of this Action; They Have Not . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

    D.    The Trustee's Success in this Matter Will Not and Cannot Have the Requisite Preclusive Effect on the Homeowners' Claims or Defenses to Require their Joinder . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

    E.    The Defendants Do Not Face Double or Inconsistent Obligations . . . . . 38

    F.    The Defendants' Joinder Argument Should Have Been Rejected Because It Contradicted the Argument These Same Defendants Successfully Made in *Jones* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

# TABLE OF AUTHORITIES

**Cases**

*Ameriserv Financial Bank v. Commerce Bank, N.A.*, 2009 WL 890583
(W.D. Pa. March 26, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Amp'd Mobile, Inc. v. Adderton (In re Amp'd Mobile, Inc.)*, 2009 WL 1025952
(Bankr. D. Del. Apr. 16, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Argus Management Group v. Rodman (In re CVEO Corporation)*, 2004 WL 3656821
(Bankr. D. Del. Dec. 15, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Asousa Partnership v. Smithfield Foods, Inc. (In re Asousa Partnership)*, 2006 WL
1997426 (Bankr. E.D. Pa. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Investment Corp.)*,
256 B.R. 664 (Bankr. S.D. NY 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 31

*Bank of America National Trust & Savings Assoc. v. Hotel Rittenhouse Assoc.*,
844 F.2d 1050 (3d Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

*Bauman v. Bliese, et al. (In re McCarn's All-state Fin., Inc.)*, 326 B.R. 843 (Bankr. M.D.
Fla. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*,
362 B.R. 624 (Bankr. S.D. N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984) . . . . . . . . . . . . . . . . . . . . . . 43

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . 11, 12, 15, 16

*Betinsky v. Continental Bank (In re Betinsky)*, 45 B.R. 244 (Bankr. E.D. Pa. 1984) . . . . . . . . . 14

*Brandt v. Trivest II, Inc. (In re Plassein International Corp.)*, 352 B.R. 36
(Bankr. D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Buckley v. Merrill Lynch & Co., Inc. (In re DVI, Inc.)*, 2008 WL 4239120
(Bankr. D. Del. Sept. 16, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 16, 28

*Burry v. Key Bank USA, N.A. (In re Burry)*, 309 B.R. 130
(Bankr. E.D. Pa. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 25

*Coregis Insurance Co. v. Wheeler*, 180 F.R.D. 280 (E.D. Pa. 1998) . . . . . . . . . . . . . . . . . . . . . . 35

*Cuthill v. Kime* (*In re Evergreen Security, Ltd.*), 319 B.R. 245 (Bankr. M.D. Fla. 2003) . . . . . . 31

*DCC Operating, Inc. v. Siaca (In re Olympic Mills Corp.)*, 477 F.3d 1 (1st Cir. 2007) . . . . . . . 39

*Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1 (1st Cir. 1998) . . . . . . . . . . . . . . . . . 39, 42, 43

*Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . 11

*Field v. Volkswagenwerk AG*, 626 F.2d 293 (3d Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . 32, 42, 43

*Forman v. Jeffrey Matthews Financial Group, LLC* (*In re Halpert & Company, Inc.*),
254 B.R. 104 (Bankr. D.N.J. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Gredd v. Bear, Stearns Securities Corp. (In re Manhattan Investment Fund Ltd.)*,
310 B.R. 500 (Bankr. S.D. N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 31

*Hecht v. Malvern Preparatory School*, Civ. A. No. 10-1374 (E.D. Pa. May, 26, 2010) . . . . . . . 30

*Holber v. Jacobs (In re Jacobs)*, 401 B.R. 161 (Bankr. E.D. Pa. Jan. 21, 2009) . . . . . . . . . . 33, 41

*Holber v. Dolchin Slotkin & Todd, P.C.*, 2006 WL 1997431
(Bankr. E.D. Pa. May 18, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*In re Carrozzella & Richardson*, 386 B.R. 480 (D. Conn. 2002) . . . . . . . . . . . . . . . . . . . . . . . . 29

*Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399
(3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36, 37, 38

*Jobin v. Lalan (In re M&L Business Machine Co., Inc.)*, 160 B.R. 851
(Bankr. D. Colo. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Jones v. ABN AMRO Mortgage Group, Inc.*, 551 F. Supp.2d 400 (E.D. Pa. 2008),
*affd.*, 2010 WL 2038840 (3rd Cir. May 25, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39

*Kimmelman v. Port Authority (In re Kiwi Int'l Air Lines, Inc.)*, 344 F.3d 311
(3d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Liberty Mutual Insurance Co. v. Treesdale, Inc.*, 419 F.3d 216 (3d Cir. 2005) . . . . . . . . . . . . 34

*Liebersohn v. Campus Crusade for Christ, Inc. (In re CF Foods, L.P.)*, 280 B.R. 103
(Bankr. E.D. Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*McTernan v. City of York*, 564 F.3d 636 (3d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . 12

*Mellon Bank, N.A. v. Metro Communications.*, 945 F.2d 635 (3d Cir. 1991) . . . . . . . . . . . 18, 19

*Mellon Bank, N.A. v. Official Committee of Unsecured Creditors (In re R.M.L., Inc.)*,
92 F.3d 139 (3d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 17

*Micheel v. Haralson*, 586 F. Supp. 169, 171 (E.D. Pa. 1983) . . . . . . . . . . . . . . . . . . . . . 42, 43

*Miller v. Greenwich Capital Financial Products, Inc. (In re American Business Financial
Services, Inc.)*, 361 B.R. 747 (Bankr. D. Del. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17

*Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773
(3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

*Neilson v. Sheri Southern (In re Webvan Group, Inc.)*, 2004 WL 483580
(Bankr. D. Del. March 9, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*North American Specialty Insurance Co. v. Chichester School Dist.*, No. Civ. A. 99-2394,
2000 WL 1052055 (E.D. Pa. July 20, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32, 39

*OHC Liquidation Trust v. Credit Suisse First Boston (In re Oakwood Homes Corp.)*,
340 B.R. 510 (Bankr. D. Del. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Official Committee of Unsecured Creditors v. Credit Suisse First Boston (In re Exide
Technologies)*, 299 B.R. 732 (Bankr. D. Del. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414 (3d Cir. 1988) . . . . . . . . . . . 44

*Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer
Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203
(3d Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Perkins v. Crown Fin., LLC (In re Int'l Mgmt. Assocs. LLC)*, 2007 Bankr. LEXIS 1566
(Bankr. N.D. Ga. Mar. 6, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Perkins v. Parise (In re Global Trading Investments LLC)*, 2006 WL 3040918
(Bankr. D. N.J. Oct. 25, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) . . . . . . . . . . . . . . . . . . . . 11, 12

*Quilling v. Stark*, 2006 WL 1683442 (N.D. Tex. June 19, 2006) . . . . . . . . . . . . . . . . . . . . . . . 31

*Rieser v. Hayslip, et al. (In re Canyon Sys. Corp.)*, 343 B.R. 615 (Bankr. S.D. Ohio 2006) . . . 31

*Roeder v. Lockwood (In re Lockwood Auto Group, Inc.)*, 2010 WL 1931986
(Bankr.W.D. Pa. May 14, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355 (3d Cir. 1996) . . . . . . . . 44

*Santa Barbara Capital Management v. Neilson (In re Slatkin),* 525 F.3d 805
(9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510 (3d Cir. 1953) . . . . . . . . . . . . . . . . . . . 44

*Sharp Int'l Corp. v. State Street Bank and Trust Co. (In re Sharp Int'l Corp.)*,
403 F.3d 43 (2d Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, 29

*Silverman v. Actrade Capital, Inc.,* 337 B.R. 791 (Bankr. S.D. N.Y. 2005) . . . . . . . . . . . . . . . 25

*Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility
Commission*, 210 F. Supp.2d 689 (E.D. Pa. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Spring-Ford Area School Dist. v. Genesis Ins. Co.*, 158 F. Supp.2d 476
(E.D. Pa. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Stanziale v. Pepper Hamilton LLP (In re Student Finance Corp.)*, 335 B.R. 539
(D. Del. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Terry v. June*, 432 F. Supp.2d 635 (W.D. Va. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Torcise v. Community Bank of Homestead (In re Torcise)*, 116 F.3d 860
(11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 39, 40

*Trenwick America Litigation Trust v. Ernst & Young, LLP,* 906 A.2d 168
(Del. Ch. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 41

*United States v. Payment Processing Center, LLC*, 2006 WL 2990392
(E.D. Pa. Oct. 18, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v. Rocky Mountain Holdings, Inc.*, 2009 WL 564437
(E.D. Pa. Mar. 4, 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 28

vi

*Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488 (Bankr. N.D. Ill. 1988) . . . . . . . . . . . . 40, 42

*Wilkerson v. New Media Tech. Charter Sch.*, 522 F.3d 315 (3d Cir. 2008) . . . . . . . . . . . . . . 11

**Statutes**

12 PA C.S. §5104 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 27

11 U.S.C. §544 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C. §547 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

11 U.S.C. §548 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 25, 26, 27, 29, 30, 31, 32, 33, 41

11 U.S.C. §550 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 33, 41

28 U.S.C. §158(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**Rules**

Fed.R.Civ.P. 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Fed.R.Civ.P. 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 26, 27, 28, 29

Fed.R.Civ.P. 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 16

Fed.R.Civ.P. 19 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 32, 34, 35, 36, 38, 39, 40, 42, 43

Fed.R.Bankr.P. 7012 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Fed.R.Bankr.P. 7019 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

## INTRODUCTION

Applying the wrong pleading standard and the wrong legal standards for the determinations of reasonably equivalent value and necessary parties in an avoidance action, while wrongly crediting an affirmative defense at the pleading stage, the bankruptcy court engaged in premature fact-finding and erroneously dismissed the Trustee's adversary complaints – all of which resulted in leaving intact the fraudulent transfer of $49 million from the Debtors – whose former principal has been incarcerated for operating the Debtors as a Ponzi Scheme – to the Defendant Banks, to whom the Debtors owed no obligations whatsoever.  Accordingly, the orders of the bankruptcy court should be reversed, and the Trustee's Complaints should be reinstated for the following reasons:

(1)    The bankruptcy court engaged in premature fact-finding when it disregarded the Trustee's allegation of the lack of reasonably equivalent value – an allegation itself, sufficient in law to survive a motion to dismiss – and then held, incorrectly as a matter of law, that the challenged transfers were supported by sufficient value;

(2)    To the extent the issue of reasonably equivalent value was appropriately considered at the motion to dismiss stage, the bankruptcy court's decision was fatally flawed because:

(a) the court failed to mention – let alone apply – the applicable standard in the Third Circuit, *i.e.*, the "totality of the circumstances" test, and, instead, relied upon inapposite decisions of other jurisdictions in which a different standard was applied.  When considered in the context of the proper standard, the lack of reasonably equivalent value becomes apparent because: (1) with each transfer to the Defendants, the Debtors' net debts increased and their overall commercial value decreased; and, (2) the Debtors never received a benefit equal to the

challenged transfers, since the amounts transferred on behalf of a particular Homeowner always exceeded the amount paid to the Debtors by that Homeowner (with the shortfall being made up by stealing from other Homeowners and other victims); and

(b)  the court failed to differentiate between the two classes of victims – the Homeowners, who had borrowed money from and, therefore, had obligations to the Defendants, and the so-called "Mortgage Participation Investors," who had not borrowed money from and who had no obligations to the Defendants.  In finding reasonably equivalent value, the bankruptcy court focused solely on the indirect benefit to the Debtors derived from the Debtors' transfers of the Homeowners' funds to the Defendants (i.e., the Debtors had obligations to Homeowners to make payments on their behalf to the Defendants and, therefore, each time the Debtors made a transfer to the Defendants, the Homeowners' obligations to the Defendants were credited and the Debtors' obligations to the Homeowners were reduced).  Since the Mortgage Participation Investors had no obligations to the Defendants, transfers made by the Debtors to the Defendants using funds stolen from the Mortgage Participation Investors did not result in any value or benefit to the Debtors, i.e., no obligation of the Debtors was reduced; rather, the Debtors' debts increased and overall commercial value decreased with each transfer.  Unlike the Homeowner victims of the Ponzi Scheme, the Mortgage Participation Investors – like the Debtors themselves – had no obligations to the Defendants;

(3)  The bankruptcy court erroneously found in Defendants' favor on a "good faith" affirmative defense – which required a fact-sensitive determination not appropriate on a motion to dismiss and for which the Defendants had the burden of pleading and proof;

(4)  The bankruptcy court applied the wrong standard for pleading "intent" under Rule

9(b) by failing to appreciate that intent need only be alleged "generally," failed to apply the well-established rule that Ponzi scheme allegations conclusively establish the requisite intent for fraudulent transfer claims, and failed to appreciate that it is the intent of the transferor – in this case the Debtors – and not that of the transferees or creditors, that is relevant in an avoidance action under federal and state law;

      (5)    The bankruptcy court erroneously concluded that the hundreds of Homeowners were necessary parties in contravention of Rule 19 and the well-established principle that only the trustee and the transferee – whose transfer the trustee seeks to avoid – are necessary parties in an avoidance action; and,

      (6)    The bankruptcy court erroneously concluded that Defendants were not estopped from advancing a joinder argument in this case even though they successfully advanced a contrary position before this Court in another case – therein defeating the Homeowners' effort to transfer claims to the bankruptcy court because they were not even "remotely" related to the avoidance claims of the Trustee.

## STATEMENT OF THE BASIS OF APPELLATE JURISDICTION

This Court has jurisdiction over this appeal from the final judgments of the bankruptcy court pursuant to 28 U.S.C. §158(a)(1).

## STATEMENT OF THE ISSUES PRESENTED

1.    Whether the bankruptcy court erred when it failed to apply the appropriate legal standard on a motion to dismiss and instead, engaged in a premature and improper factual inquiry to conclude that Debtors obtained not only reasonably equivalent value but actually equivalent value in exchange for the payments it made to the Defendants, an issue properly reserved for the fact-finder at trial?

2.    Whether the bankruptcy court erred when it failed to apply the "totality of the

3

circumstances" standard that courts within the Third Circuit must apply to determine if the transactions between Debtors and Defendants conferred reasonably equivalent value on the Debtors, and instead applied a contrary standard utilized by courts outside of the Third Circuit?

3.    Whether the bankruptcy court erred in analyzing only transactions between Debtors and Defendants which involved the use of the Homeowners' money without even considering transfers made by Debtors which used money from other victims of the Ponzi Scheme (*i.e.*, transactions that used the Mortgage Participation Investors' money), in which neither the Debtors nor the Mortgage Participation Investors received any value or benefit (direct or indirect), let alone, reasonably equivalent value, in exchange for the payments Debtors made to Defendants?

4.    Whether the bankruptcy court erred when it concluded that the transfers made between Debtors and Defendants, on behalf of the Homeowners, were supported by "actually equivalent value" when, in actuality, the transfers made by Debtors to Defendants exceeded the payments Debtors received from the Homeowners and the concomitant amount that was credited from the obligations Debtors owed to the Homeowners?

5.    Whether the bankruptcy court erred in requiring the Trustee/Plaintiff, a third party outsider to the transactions, to plead – and essentially prove – that Defendants lacked good faith, an affirmative defense?

6.    Whether the bankruptcy court erred when it concluded that the Trustee/Plaintiff did, in fact, plead that Defendants took the transfers in good faith, based solely on the fact that there was no contractual relationship between Debtors and Defendants?

7.    Whether the bankruptcy court erred when it: (a) concluded that the Trustee/Plaintiff, a third party outsider to the transactions, was required to plead actual intent to defraud with particularity in order to satisfy Fed. R.Civ.P. 9(b) in alleging actual fraudulent transfers under §548(a)(1)(A) of the Bankruptcy Code and Pennsylvania's Uniform Fraudulent Transfer Act, 12 Pa. Cons. Stat. Ann. §5104(a)(1)(A), where the Debtors' sole principal admitted, pled guilty to, and is serving jail time for, running the Ponzi Scheme and (b) ignored explicit averments in the Complaints which set forth in great detail: (1) the existence, operation and implementation of the Ponzi Scheme; (2) how Snyder used the monies of both the Homeowners and the Mortgage Participation Investors to perpetuate the Ponzi Scheme and (3) how the transfers made by Snyder furthered the Ponzi Scheme and kept it alive?

8.    Whether the bankruptcy court erred when it concluded that the Homeowners were necessary parties to this matter under Fed.R.Civ.P. 19(a) when this case involves avoidance actions commenced under Sections 544, 547, and 548 of the Bankruptcy Code and Section 550 of the Bankruptcy Code and supporting case law only require that a Trustee sue the initial transferees (*i.e.*, the Defendants)?

## APPLICABLE STANDARD OF APPELLATE REVIEW

This Court must subject the bankruptcy court's legal conclusions to plenary review.

*Kimmelman v. Port Authority* (*In re Kiwi Int'l Air Lines, Inc.*), 344 F.3d 311, 316 (3d Cir. 2003).

## STATEMENT OF THE CASE

On March 16, 2009, and August 31, 2009, Plaintiff Lynn E. Feldman, Chapter 7 Trustee

for the bankruptcy estates of Image Masters, Inc., *et al.* ("Trustee" or "Plaintiff"), commenced

the two underlying Adversary Proceedings (which have been consolidated for this appeal)[1] in

which she sought to avoid and recover approximately $49 million of preferential and fraudulent

transfers made by the Debtors to the Defendants in furtherance of the admitted Ponzi Scheme of

convicted felon Wesley Snyder ("Snyder").

On May 7, 2009, Defendants[2] moved to dismiss certain of the Trustee's claims

---

[1]     On March 16, 2009, the Trustee filed her Complaint against the following eleven defendants: Chase Home Finance, CitiMortgage, Inc., Countrywide Home Loans, Inc., Fifth Third Bank, GMAC Mortgage Corp., Provident Funding Associates, L.P., Saxon Mortgage, Inc., Sovereign Bancorp, Inc., Suntrust Bank, Wachovia Bank, N.A., and Wells Fargo Home Mortgage. The Trustee refers to this Adversary Proceeding as the Chase Action and all references to this Complaint shall be to the "Chase Complaint." On August 31, 2009, the Trustee filed her Complaint against the following fifteen defendants: ABN Amro Mortgage Group, Inc., First Horizon Home Loan Corp., Florida Capital Bank Mortgage, Loancity.com, M&T Mortgage Corp., Morequity Inc., Nbank, Principal Residential Mortgage, Provident Savings Bank, National City Bank, Federal Home Loan Mortgage Corp., Federal National Mortgage Association, Wells Fargo Bank, Bank of New York, and Park Granada, LLC. The Trustee refers to this Adversary Proceeding as the ABN Action and all references to this Complaint shall be to the "ABN Complaint." By Order dated April 14, 2010, this Court consolidated the two underlying Adversary Proceedings for purposes of this appeal.

[2]     On May 7, 2009, each of the Defendants in the Chase Action filed a motion to dismiss, in which each Defendant adopted the arguments made in Defendants' Motion to Dismiss for Failure to Join Indispensable Parties filed by Defendants Countrywide Home Loans, Inc., SunTrust Bank, and Wells Fargo Home Mortgage ("Countrywide Motion") and Defendant Citimortgage, Inc.'s Motion to Dismiss ("Citimortgage Motion"). Following the bankruptcy court's decision in the Chase Action, on February 2, 2010, the Defendants in the ABN Amro

contending that: (1) the Trustee's constructive fraud claims (Counts I, II and IV) should be dismissed because the Debtors received reasonably equivalent value for each of the challenged transfers; (2) the Trustee's actual fraud claims (Counts I and II) should be dismissed for failure to plead the requisite fraudulent intent with sufficient particularity; and, (3) the "Homeowners are necessary parties under Rule 19 since they purportedly asserted related claims in two cases in the Eastern District of Pennsylvania – *Jones v. ABN Amro Mortgage Group, Inc.,* Civ. A. No. 07-4328 ("*Jones*") and *Lorah v. SunTrust Mortgage Inc.*, Civ. A. No. 08-0703 ("*Lorah*") – and that the Trustee's failure to join them in this case required dismissal of the complaint.  On June 10, 2009, the Trustee filed her Omnibus Memorandum of Law in Opposition to Defendants' Motions to Dismiss ("Trustee's Opposition").  Following oral argument and supplemental briefing on the issue of reasonably equivalent value, the bankruptcy court granted the Defendants' Motions by Memorandum Decision on December 17, 2009, and dismissed all of the Trustee's claims.[3]

The Trustee filed Notices of Appeal on December 24, 2009, February 9, 2010 and March 10, 2010.  By Order dated April 14, 2010, this Court consolidated the two underlying Adversary Proceedings for purposes of this appeal.

### STATEMENT OF FACTS

On September 18, 2007 (the "Petition Date"), Image Masters, Inc. ("Image Masters"), OPFM, Inc., Mortgage Assistance Professionals, Inc., Mortgage Assistance Professionals, Inc., II, Discovered Treasures, Inc. and DIVIDIT, Inc. (collectively the "Debtors"), each filed

---

Action filed a Joint Motion to Dismiss that essentially adopted the motions and decision of the bankruptcy court in the Chase Action.

[3]    By Consent Order dated March 3, 2010, the bankruptcy court adopted its findings in the Chase Action and dismissed all of the claims in the ABN Action.

6

voluntary petitions for relief under chapter 7 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of Pennsylvania, Reading Division.  (Chase Complaint at ¶5).[4]  On September 19, 2007, the Trustee was appointed as the interim Chapter 7 Trustee of the Debtors' estates.  (*Id.* at ¶6).  The Trustee became the "permanent" Trustee on or about November 27, 2007.  (*Id.*)  The Debtors are related entities and were, prior to the Petition Date, wholly owned, controlled and operated by Wesley Snyder ("Snyder").  (*Id.* at ¶7).

Prior to the Petition Date, Snyder used the Debtors, and in particular, Image Masters, to orchestrate, effectuate and perpetuate a multi-million dollar Ponzi Scheme that defrauded more than 800 homeowners and investors out of tens of millions of dollars, a federal crime for which Snyder has been convicted and incarcerated.  (*Id.* at ¶8).

### The Complaints

On March 17, 2009, and August 31, 2009, the Trustee commenced the two underlying Adversary Proceedings by filing her respective Complaints to Avoid and Recover Transfers (the "Complaints").  In the two Complaints, the Trustee sought to avoid and recover approximately $49 million of preferential and fraudulent transfers made by the Debtors to the Defendants in furtherance of Snyder's admitted Ponzi Scheme.  As alleged, each of the Defendants is either a lending institution that provided mortgage loans to homeowners who were victims of the Ponzi Scheme, or an entity that purchased some of the underlying mortgage loans from one of the original mortgage originator institutions.  Each of the Defendants received fraudulent and/or preferential transfers from Image Masters in furtherance of the Ponzi Scheme – all of which

---

[4]        Unless noted otherwise, the facts outlined herein are taken from the Chase Complaint.  For purposes of this consolidated appeal, the parties have agreed that the facts alleged in both Complaints are essentially the same.

transfers are subject to avoidance and recovery by the Trustee. (*Id.* at ¶20). In her Complaints, the Trustee specifically identified the fraudulent transfers made by the Debtors which she sought to avoid. (Chase Comp. at ¶¶52, 60, and 61; ABN Comp. at ¶¶56, and 64-69). In particular, Exhibits D through N of the Chase Complaint and Exhibits D through S of the ABN Complaint identify by check number, date and amount, each transfer that the Debtors made to each respective Defendant/Transferee, and which the Trustee sought to avoid.

As part of his illegal scheme, Snyder convinced homeowners (collectively, the "Homeowners" and each a "Homeowner") to refinance existing mortgages through a "conventional" mortgage loan such as those extended by the Defendants (the "Conventional Loan"), to cash out equity in their homes (by borrowing more money through the Conventional Loan than they needed to pay off their existing mortgage), and to "give" the surplus funds received at settlement (the "Wrap Amount") to Image Masters. (*Id.* at ¶31). Snyder then persuaded the Homeowners to sign new notes and mortgages in favor of Image Masters (the "Image Masters Mortgage") at a lower interest rate and, in some cases, for a shorter term than the Homeowners' Conventional Loan. (*Id.* at ¶33). Snyder misled the Homeowners into believing that the Wrap Amount would either: (i) be used to immediately pay down the Homeowners' Conventional Loan by an equivalent amount (a "Prepayment"); or (ii) invested by Image Masters with the proceeds thereof used to pay the difference between the Homeowners' monthly payment obligations under the Conventional Loans, and the Homeowners' payments to Image Masters under the Image Masters Mortgage. (*Id.* at ¶32). This lower payment from the Homeowner to Image Masters was the "hook" by which Snyder was able to attract and lure new victims. In reality and contrary to the representations of Snyder and those acting under his direction, the

Wrap Amounts paid by a particular Homeowner were neither used to pay down that Homeowner's "conventional" mortgage nor deposited in a segregated account for investment. (*Id.* at ¶35). Rather, Image Masters deposited all payments received on account of the Wrap Amounts into an Image Masters account (the "Account"), commingling the Wrap Amounts paid by all Homeowners with all other funds derived from the Debtors' collective businesses. (*Id.* at ¶¶28 and 46).

Due to the significant cash needs of the Ponzi Scheme and Snyder's desperate need to obtain additional funds with which to keep the illegal scheme alive, Snyder marketed a "Wrap Around Mortgage Participation" program whereby investors (the "Mortgage Participation Investors") would invest funds either with Image Masters or with one of the other Debtors, and, in return, these investors purportedly received a security interest in and to certain of the Image Masters' Mortgages. (*Id.* at ¶49). In reality, the Mortgage Participation Investors were never granted valid and/or perfected security interests in and to these mortgages as no security agreements, mortgages or documents of any kind were ever filed of record. (*Id.* at ¶50). Instead, Snyder used the funds received from the Mortgage Participation Investors to subsidize, at least in part, the Homeowners' obligations to Defendants (to whom these investors had no liability) and to keep the Ponzi Scheme alive. (*Id.* at ¶51).

As part of the scheme, Snyder persuaded the Homeowners to make monthly mortgage payments to Image Masters – in amounts less than the monthly mortgage payments due and owing by these same Homeowners under the Conventional Loans (since they were duped into believing that Image Masters would make up the shortfall from the profits earned on the investment of the Wrap Amounts, and that Image Masters had forwarded Prepayments to the

9

conventional lenders when such was not the case). (*Id.* at ¶34). Because the Wrap Amounts

were never invested, there were no profits earned on the Wrap Amounts. As a result, the Wrap

Amounts could not be used to make up the shortfalls on the payments due on the Conventional

Loans, and since Prepayments were not used to reduce the outstanding balances of the

Conventional Loans, each time Image Masters made a payment on a Conventional Loan, it used

some of its legitimate income and some of the money fraudulently obtained and/or stolen from

other Ponzi Scheme victims, including Homeowners and the Mortgage Participation Investors.

(*Id.* at ¶35).

From at least as early as September 18, 2003, and continuing through and including the

Petition Date, Image Masters, in part using funds stolen from other Homeowners or Mortgage

Participation Investors, would pay directly to the Defendants some of the regular monthly

payments due on account of the Conventional Loans. There can be no question that Image

Masters robbed the funds of "Peter" to satisfy the obligations of "Paul," the classic earmark of a

Ponzi Scheme. (*Id.* at ¶36). Snyder and Image Masters used the Wrap Amounts and funds from

the Mortgage Participation Investors commingled in the Image Masters Account to keep the

Ponzi Scheme alive and to fraudulently prolong the Debtors' insolvent business, using the Wrap

Amounts and investment funds from new customers/investors/victims to pay the mortgage

obligations of prior customers, as well as the salaries, office expenses, and overhead for Snyder's

businesses, and the personal expenses of Snyder and his family. (*Id.* at ¶47).

As alleged in the Complaints, each time the Debtors made a loan payment to one of the

Defendants, the Debtors' net debts increased as a result of the fact that they had to make up the

shortfall by stealing money from other Homeowners or from the Mortgage Participation

Investors. (*Id.* at ¶¶53 and 72). Eventually, the scheme collapsed when Snyder was unable to generate sufficient funds to make up for the shortfall and to cover current payments on the Homeowners' Conventional Loans, at which time Image Masters ceased making payments on the Conventional Loans, whereupon the jig was up and the Ponzi Scheme revealed. (*Id.* at ¶53).

## ARGUMENT

### I.    THE BANKRUPTCY COURT FAILED TO APPLY THE APPROPRIATE LAW OR STANDARDS APPLICABLE IN THE THIRD CIRCUIT TO THE FACTUAL ISSUES OF REASONABLY EQUIVALENT VALUE AND GOOD FAITH.

#### A.    Legal Standard for Motion to Dismiss.[5]

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must accept as true all well-pleaded facts in the complaint and all reasonable inferences that can be drawn therefrom, and dismiss the complaint only if it does not plausibly suggest an entitlement to relief. *Fellner v. Tri-Union Seafoods, L.L.C.*, 539 F.3d 237, 242 (3d Cir. 2008); *Wilkerson v. New Media Tech. Charter Sch.*, 522 F.3d 315, 321-22 (3d Cir. 2008) (stating that "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.") (citations omitted). Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-1965 (2007); *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) ("The Supreme Court [in *Twombly*] reaffirmed that Fed.R.Civ.P. 8 'requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim

---

[5]    Rules 12 and 19 of the Federal Rules of Civil Procedure are applicable in bankruptcy cases pursuant to Federal Rules of Bankruptcy Procedure 7012 and 7019.

is and the grounds upon which it rests, and that this standard does not require detailed factual allegations.'") (quoting *Twombly*, 127 S.Ct. At 1964).

Contrary to the bankruptcy court's application below, the Supreme Court in *Twombly* did not heighten the pleading standard or impose a probability standard. Indeed, the Supreme Court emphasized throughout its decision that it did not heighten the standard. *Twombly*, 127 S.Ct. at 1964, 1965, 1973 n. 14, and 1974 ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face."). As the Third Circuit has since recognized, in *Twombly*, "the Supreme Court confirmed that Fed.R.Civ.P. 8(a)(2) 'requires only a short and plain statement of the claim showing that the pleader is entitled to relief, *in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests*,' and that this standard does not require 'detailed factual allegations.'" *McTernan v. City of York*, 564 F.3d 636, 646 (3d Cir. 2009) (*quoting Twombly*, 127 S.Ct. at 1964) (emphasis added); *see also Phillips*, 515 F.3d at 233 (holding that the "notice pleading standard of Rule 8(a)(2) remains intact" after *Twombly*). As such, under *Twombly*, the touchstone of a plaintiff's pleading burden is fair notice of her claims. Moreover, under *Twombly*, when faced with a motion to dismiss, a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, *under any reasonable reading of the complaint*, the plaintiff may be entitled to relief." *Id.* at 646 (*quoting Phillips*, 515 F.3d at 233) (emphasis added).

The bankruptcy court erroneously dismissed both the Trustee's constructive and actual fraudulent conveyance claims because of its premature factual conclusion that the Trustee had failed to adequately establish the lack of reasonably equivalent value. The bankruptcy court's

dismissal of these claims on this basis was wrong for several reasons. First, reasonably equivalent value is a factual determination that should not be made on a motion to dismiss. The bankruptcy court disregarded this well-settled principle and engaged in a protracted fact-finding exercise to conclude that the Debtors received reasonably equivalent value. Second, the bankruptcy court failed to consider the numerous decisions holding that a plaintiff's allegation that the exchange lacked reasonably equivalent value was sufficient to survive a motion to dismiss. Third, the bankruptcy court ignored the applicable standard in the Third Circuit for determining whether reasonably equivalent value exists, and instead relied exclusively on inapposite decisions of courts outside this jurisdiction which directly contravene the Third Circuit standard. Fourth, while engaging in its premature fact-finding, the bankruptcy court ignored the detailed factual allegations contained in the Complaint which support the Trustee's allegation of a lack of reasonably equivalent value – failing to consider the facts surrounding the Debtors' use of moneys stolen from the Mortgage Participation Investors to make payments to the Defendants on behalf of the Homeowners which alone establish the lack of reasonable equivalent value. Each of these errors requires reversal of the bankruptcy court's decision.

**B.    Reasonably Equivalent Value is a Factual Determination that Should Not be Made on a Motion to Dismiss.**

It is well-settled that the determination of reasonably equivalent value requires a fact sensitive analysis and one that is not appropriate for disposition on a motion to dismiss. *See Pension Transfer Corp. v. Beneficiaries Under the Third Amendment to Fruehauf Trailer Corp. Retirement Plan No. 003 (In re Fruehauf Trailer Corp.)*, 444 F.3d 203, 213 (3d Cir. 2006) (describing the reasonably equivalent value inquiry as a "factual analysis"); *Mellon Bank, N.A. v.*

13

*Official Committee of Unsecured Creditors* (*In re R.M.L., Inc.*), 92 F.3d 139, 148-49 (3d Cir. 1996) (stating that when analyzing a fraudulent transfer, the court must make "an express factual determination as to whether the debtor received any value at all."); *United States v. Rocky Mountain Holdings, Inc.*, 2009 WL 564437, *7, n.8 (E.D. Pa. Mar. 4, 2009) (stating that the "Court rejects this [reasonably equivalent value] argument since whether a transferee gave value for the transfer is . . . a question of fact and not amenable to review on a motion to dismiss."); *Asousa Partnership v. Smithfield Foods, Inc.* (*In re Asousa Partnership*), 2006 WL 1997426, *12 (Bankr. E.D. Pa. 2006) (stating "[w]hether reasonably equivalent value was exchanged is an inherently factual issue to be determined on a case-by-case basis."); *Betinsky v. Continental Bank* (*In re Betinsky*), 45 B.R. 244, 246-47 (Bankr. E.D. Pa. 1984) (denying defendant's motion to dismiss based on reasonably equivalent value); *Forman v. Jeffrey Matthews Financial Group, LLC* (*In re Halpert & Company, Inc.*), 254 B.R. 104, 115 (Bankr. D.N.J. 1999) (stating that "[s]ince resolving [reasonably equivalent value] would require a 'fact-intensive' inquiry, it would be improper for the Court to decide it on a motion to dismiss."); *Buckley v. Merrill Lynch & Co., Inc.* (*In re DVI, Inc.*), 2008 WL 4239120, *9 (Bankr. D. Del. Sept. 16, 2008) (holding that all that is necessary to survive a motion to dismiss is "an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."); *Miller v. Greenwich Capital Financial Products, Inc. (In re American Business Financial Services, Inc.)*, 361 B.R. 747, 760 (Bankr. D. Del. 2007) (holding that totality of circumstances is a factual inquiry "not suitable for determination on a motion to dismiss."); *OHC Liquidation Trust v. Credit Suisse First Boston* (*In re Oakwood Homes Corp.*), 340 B.R. 510, 525 (Bankr. D. Del. 2006) (stating that "the complaint states that the Debtors did not receive reasonably equivalent value in return

14

for their transfers.  If the defendants disagree with this factual allegation, they may contest it at trial."); *Brandt v. Trivest II, Inc.* (*In re Plassein International Corp.*), 352 B.R. 36, 42 (Bankr. D. Del. 2006) (holding that the trustee alleged sufficient facts to survive a motion to dismiss based on reasonably equivalent value when the trustee alleges "that the Debtor received less than reasonably equivalent value . . . ."); *Argus Management Group v. Rodman* (*In re CVEO Corporation*), 2004 WL 3656821, *4 (Bankr. D. Del. Dec. 15, 2004) (holding that the factual finding regarding reasonably equivalent value is improper at the motion to dismiss stage); *Neilson v. Sheri Southern* (*In re Webvan Group, Inc.*), 2004 WL 483580, *2 (Bankr. D. Del. March 9, 2004) (holding that an allegation that debtor received less than reasonably equivalent value was sufficient to survive a motion to dismiss); *Official Committee of Unsecured Creditors v. Credit Suisse First Boston* (*In re Exide Technologies*), 299 B.R. 732 (Bankr. D. Del. 2003) (denying defendants' motion to dismiss based on reasonably equivalent value because it involved a factual inquiry).  Moreover, these same cases hold that a plaintiff satisfies her pleading obligations by alleging the absence of reasonably equivalent value.  The bankruptcy court's outright rejection of these cases and premature fact-finding lacked adequate support in law.

The Trustee specifically pled the absence of reasonably equivalent value (Chase Comp. at ¶¶72, 78 and 88; ABN Comp. at ¶79, 85, and 95), all that is required to survive a motion to dismiss.  Contrary to the Defendants' argument below and the bankruptcy court's conclusion, the Supreme Court's decision in *Twombly* cannot be interpreted to undermine the consistent holdings of these cases.  Indeed, some of these cases were decided after *Twombly*, including *Rocky Mountain*, 2009 WL 564437 (E.D. Pa. March 4, 2009), in which the District Court denied the defendant's challenge to the constructive fraudulent transfer claims because reasonably

15

equivalent value is "a question of fact and not amenable to review on a motion to dismiss." *Id.* at *7, n. 5 (citations omitted). *See also Buckley*, 2008 WL 4239120, at *9 (agreeing with the plaintiff's contention that the issue of reasonably equivalent value is a factual determination not appropriate for resolution at the motion to dismiss stage).

In *Rocky Mountain*, the plaintiff sought to avoid and set aside various fraudulent conveyances on both actual and constructive fraudulent transfer theories. The defendant moved to dismiss the plaintiff's constructive fraud claims because of the plaintiff's purported failure to plead facts sufficient to demonstrate that the defendant did not exchange reasonably equivalent value for the challenged transfers. *Id.* at *7 and *9. After discussing the 12(b)(6) standard under *Twombly*, the court held that the plaintiff's mere allegation that the transfers at issue "were made without the exchange of reasonably equivalent value (without fair consideration)," was sufficient to survive the defendant's motion to dismiss even under the Supreme Court's decision in *Twombly*. *Id.* at *9.

Like the plaintiff in *Rocky Mountain*, the Trustee here has specifically pled the absence of reasonably equivalent value, and that is all that is required at this stage of the case. *See also Buckley*, 2008 WL 4239120, at *9 (holding subsequent to *Twombly* that to survive a motion to dismiss plaintiff must make "an allegation that there was a transfer for less than reasonably equivalent value at a time when the Debtors were insolvent."). Moreover, the bankruptcy court failed to recognize or address the fact that the Trustee pled far more than simply the absence of reasonably equivalent value. Rather, the Trustee pled in great detail the facts underlying the Ponzi scheme – a scheme which was admitted to, *in toto*, by Snyder, whose actions as the sole principal and shareholder of Image Masters, must be imputed to Image Masters. (*See e.g.*, Chase

16

Comp. at ¶¶30-53; ABN Complaint ¶¶34-57).  These alleged facts, accepted as true as they must be at this stage of the case, aptly met the Trustee's pleading burden on reasonably equivalent value and rendered erroneous the bankruptcy court's premature factual finding that the Debtors received an indirect benefit in an amount reasonably equivalent to each challenged transfer.

C.   **The Bankruptcy Court Completely Ignored the "Totality of the Circumstances" Standard that Courts in the Third Circuit Must Apply in Making This Factual Determination, Under Which Debtors Have Alleged, and Will Prove at Trial, That They Did Not Receive Reasonably Equivalent Value.**

In prematurely reaching its conclusion as to reasonably equivalent value, the bankruptcy court ignored the appropriate standard in the Third Circuit, and instead followed several non-binding decisions of other jurisdictions which apply a different standard.  In determining whether a debtor received reasonably equivalent value, courts in the Third Circuit must apply a "totality of the circumstances" test.  *See e.g., Mellon Bank, N.A. v. Official Committee of Unsecured Creditors of R.M.L., Inc.* (*In re R.M.L., Inc.*), 92 F.3d 139, 153 (3d Cir. 1996) (stating that "in assessing the reasonable equivalence issue, the bankruptcy court appropriately relied on the totality of the circumstances test."); *In re American Business Financial Services, Inc.*, 361 B.R. at 760 (stating the "Third Circuit utilizes a totality of the circumstances test in determining whether reasonably equivalent value was given . . . ."); *In re Exide Technologies, Inc.*, 299 B.R. at 748 (stating the "Third Circuit requires that a court follow the 'totality of circumstances' test in determining whether a transaction 'conferred realizable commercial value [that was] reasonably equivalent value . . ."). Below, the bankruptcy court failed to even mention this standard, and erroneously applied a different standard from other jurisdictions.  (*See* Opinion at pp. 16-20).

In *Mellon Bank, N.A. v. Metro Communications.*, 945 F.2d 635, 647 (3d Cir. 1991), the Third Circuit described the "touchstone" of the "totality of the circumstances" test as requiring a comparison of the debtor's overall commercial value before the challenged transfers to the debtor's overall commercial value after the transfers.  The Court held:

> The touchstone is whether the transaction conferred realizable commercial value on the debtor reasonably equivalent to the realizable commercial value of the assets transferred.  Thus, when the debtor is a going concern and its realizable going concern value after the transaction is equal to or exceeds its going concern value before the transaction, reasonably equivalent value has been received.

*Id.*  Under this fact-intensive test, a court must, therefore, compare the net commercial value of the debtor before the transfer to the net value of the debtor after the transfer.

Applying the "totality of the circumstances" test, it is readily apparent that the Debtors did not receive reasonably equivalent value in exchange for the challenged transfers.  In her Complaints, the Trustee alleged the absence of reasonably equivalent value for each of the challenged transfers as follows:

> Image Masters received no value whatsoever in exchange for the Transfers alleged in this case – let alone reasonably equivalent value – because, among other reasons:
>
> (a) Image Masters had no obligation to any of the Defendants, and as a result did not receive a reduction or satisfaction of any obligations(s) owed by it to the Defendants when the Transfers were made; and
>
> (b) As a result of the nature of Ponzi Schemes in general, and the Ponzi Scheme perpetrated by Image Masters in particular, each Transfer sought to be avoided or recovered in this case resulted in increased liability on the part of Image Masters and increased harm to the Ponzi Scheme victims.  In short, due to the economic realities of Ponzi Schemes, each time Image Masters made a

18

> payment to the Defendants on behalf of one of the Homeowners,
> Image Masters stole more money from other Ponzi Scheme victims
> to make the payment on the Conventional Loan, thereby
> perpetually increasing Image Masters' liabilities in general and
> obligations to the Ponzi Scheme victims as a whole.

(Chase Comp. at ¶72; ABN Comp. at ¶79). In addition, the Trustee alleged in great detail the

facts underlying the Ponzi scheme which support, *inter alia*, the Trustee's allegation that there

was no exchange of reasonably equivalent value.

Thus, as alleged and will be proven at trial, the Debtors' overall commercial value before

each challenged transfer was greater than its overall commercial value after each transfer.

Specifically, each time the Debtors made a transfer to one of the Defendants on behalf of a

Homeowner, the Debtors stole more money from other Homeowners and the Mortgage

Participation Investors (neither of whom had any obligation to that particular Homeowner's

lender) to make up for the shortfall between the Homeowner's monthly payment to Image

Masters (say $1000) and the monthly payment submitted by Image Masters (say $1500) to the

Defendants. As a result, each time the Debtors made a transfer to the Defendants, their debts

*increased*. Under the "totality of the circumstances" test set forth by the Third Circuit in *Mellon*,

945 F.2d at 647, the Debtors' resultant increase in their overall debts necessarily demonstrates

the lack of reasonably equivalent value.

Moreover, because there was no contractual relationship of any kind between Debtors and

Defendants which obligated Debtors to make the Transfers to Defendants, Defendants' entire

argument depends on a *factual finding* that the Debtors received an indirect benefit in an amount

equal to the amounts transferred to Defendants. In reaching such a finding, the bankruptcy court

relied solely on its conclusion that each "transfer to a Defendant reduced Image Master's

19

contractual debt to the homeowner under the Image Masters Mortgage by an amount equal to the amount of the transfer." (Opinion at pp. 17-18). This premature factual conclusion, however, is belied by the facts actually alleged in the Complaints. As alleged (but disregarded), each time the Debtors transferred money to a Defendant, the transfer was for an amount *greater* than the amount the particular Homeowner paid the Debtors. (Chase Comp. at ¶¶34-35; ABN Comp. at ¶¶38-39). For example, a Homeowner would pay Image Masters $1000 under his/her Image Masters Mortgage. Image Masters, however, would *always* transfer an amount *greater* than the amount paid to Image Masters – say $1500 in this example – to the Defendant. As such, to the extent Debtors received the indirect benefit in the form of a reduction in its obligations to a particular Homeowner, that reduction was *always* in an amount significantly *less* than the amount transferred to Defendant. Accordingly, Debtors did not receive a benefit in an amount "actually equivalent" to the amounts of the challenged transfers – as the bankruptcy court prematurely concluded.

In reality, and as alleged, Debtors received far less. As described above and alleged in the Complaints, each time Debtors made a payment on behalf of a Homeowner to a particular Defendant, Debtors were forced to steal more money from other Homeowners and Mortgage Participation Investors to make that payment. For example, after Image Masters received a monthly payment from Homeowner A, Image Masters used some or all of Homeowner A's payment to pay the monthly obligations of another Homeowner or Homeowners or to pay a return to one of the Mortgage Participation Investors. As a result, when it came time to make Homeowner A's monthly payment to a Defendant, Debtors not only had to make up the difference between the amount of Homeowner A's monthly payment to Image Masters and

20

Homeowner A's larger monthly payment to a Defendant, but Debtors, in fact, had to make up for an even larger shortfall on account of the fact that the Debtors had already used some, if not all, of Homeowner A's monthly payment to Image Masters to pay the monthly payments of other Homeowners or to pay returns to Mortgage Participation Investors. Moreover, Image Masters frequently made Homeowner A's monthly payment to a Defendant prior to its receipt of Homeowner A's monthly payment to Image Masters. To make up for the shortfall under both scenarios, however, Image Masters used the funds of other Homeowners and Mortgage Participation Investors (neither of whom had any obligation to Homeowner A's lender), rather than the funds of Homeowner A, to pay Homeowner A's monthly payment; all of which resulted in an increase of the Debtors' overall debts. Thus, Debtors' overall debts to Homeowner A were not decreased by the amount transferred to Defendants on Homeowner A's behalf because Debtors used other victims' money to pay Homeowner A's obligations.

Glaringly, in reaching its premature factual conclusion, the bankruptcy court also failed to even mention, let alone consider, the alleged facts pertaining to the Mortgage Participation Investors, who had no contractual obligations to Defendants, but from whom Debtors stole money to subsidize their payments to Defendants on behalf of the Homeowners, who did have contractual obligations to Defendants. Instead, the bankruptcy court simply concluded that the Debtors received reasonably equivalent value because of the purported equivalent decrease in both the Homeowners' obligations to Defendants and the Debtors' obligations to the Homeowners.

As alleged, however, Debtors stole money from the Mortgage Participation Investors in order to subsidize their, otherwise short, payments to Defendants. (Chase Comp. at ¶¶49-51;

ABN Comp. at ¶¶53-55).  There is no question that the Debtors used the money of the Mortgage Participation Investors to pay some portion of the Homeowners' mortgage payments to the Defendants.  Unlike the Homeowner victims of Snyder's scheme, however, the Mortgage Participation Investors – like Debtors themselves – did not have any contractual obligation to Defendants.  As such, the Mortgage Participation Investors did not have a debt satisfied, even in part, by any of the Debtors' transfers to the Defendants.  Indeed, the Debtors' debts to the Mortgage Participation Investors were *never* reduced in any amount as a result of Debtors' transfers to the Defendants.  Because neither the Mortgage Participation Investors nor the Debtors owed Defendants anything, neither received a benefit of any kind from the Debtors' transfers of the money they stole from the Mortgage Participation Investors to the Defendants.  For this reason alone, Debtors did not receive a benefit reasonably equivalent to the amount of each Transfer.  The bankruptcy court's disregard for these alleged facts in its premature fact-finding, coupled with its application of the wrong test for reasonably equivalent value, requires reversal.

### D.    The Bankruptcy Court Incorrectly Placed the Burden on the Trustee to Allege and Prove that Defendants Lacked Good Faith.

In dismissing the Trustee's actual fraudulent conveyance claims, the bankruptcy court erroneously placed the burden on the Trustee to allege and prove that the Defendants lacked good faith.[6]  (*See* Opinion at pp. 22-27).  It is well-settled that good faith is an affirmative defense – one that requires a fact-intensive inquiry – for which the Defendants bear the burden of proof.

---

[6]    The bankruptcy court also relied upon this erroneous basis to dismiss Trustee's actual fraudulent conveyance claims notwithstanding the fact that Defendants did *not* even move to dismiss these claims on this basis.

*See e.g., Roeder v. Lockwood (In re Lockwood Auto Group, Inc.)*, 2010 WL 1931986, *4 (Bankr. W.D. Pa. May 14, 2010); *Ameriserv Financial Bank v. Commerce Bank, N.A.*, 2009 WL 890583, *4 (W.D. Pa. March 26, 2009); *Holber v. Dolchin Slotkin & Todd, P.C.*, 2006 WL 1997431, at *19 (Bankr. E.D. Pa. May 18, 2006)*; Burry v. Key Bank USA, N.A. (In re Burry)*, 309 B.R. 130, 135 (Bankr. E.D. Pa. 2004). As such, the Trustee had no obligation to plead nor prove the lack of good faith, and the bankruptcy court's decision to the contrary was wrong.

The recent bankruptcy court decision in *In re Lockwood*, 2010 WL 1931986 (Bankr. W.D. Pa. May 14, 2010), is particularly instructive on this issue. In *Lockwood*, a bankruptcy trustee asserted claims for both actual and constructive fraudulent transfers against the defendant/transferee, First National Bank of Pennsylvania ("FNB"), under both Section 548 and PUFTA. *Id.* at *2. FNB filed a motion for summary judgment in which it argued that the trustee had failed to present any evidence that FNB had any knowledge of or participated in the fraud perpetrated by the debtor. *Id.* at *3. In rejecting the defendant bank's motion, the court confirmed that good faith was an affirmative defense on which the defendant bore the burden of proof. *Id.* at *4. Moreover, the court held, consistent with other courts in the Third Circuit, that the factual determination of good faith requires a "case-by-case" assessment. *Id.* at *4:

> First, good faith is determined according to an objective or "reasonable person" standard, and not based on the subjective knowledge or belief of the transferee. Courts thus look to what the transferee objectively knew ***or should have known*** concerning the nature of the underlying circumstances involved with the transfer. Second, once a transferee is on notice of suspicious circumstances regarding a transfer, it is obliged to conduct a diligent investigation which must "ameliorate" the issues that placed it on inquiry notice in the first place. The failure to do so can be fatal to a good faith defense. Third, among the non-exhaustive circumstances that may preclude a finding of good faith are notice of the transferor's unfavorable financial condition or insolvency, the improper nature of a transaction, and, the voidability of the transfer. ***It is apparent that under this***

23

***standard a transferee is not automatically protected by the good faith defense
merely because it had no actual knowledge that a fraud was being perpetrated.***
The transfer can still be avoided as against the transferee if the circumstances
were such that, as a reasonable person, it should have known that there was
something suspicious about the transfer but failed to investigate. *Id.* at *4-5
(emphasis added).

As the *Lockwood* Court correctly recognized, good faith is an affirmative defense that

requires a fact-intensive inquiry, applying an objective test. As such, a transferee's lack of actual

knowledge alone is insufficient to protect the transferee. Under the applicable standard, if a

reasonable person or entity in the transferee's position would have discovered the underlying

wrongdoing, the transferee is not entitled to the protection of the good faith affirmative defense.

Simply put, such a determination should not have been made on a motion to dismiss.

Here, the bankruptcy court prematurely determined that the Defendants received the

challenged transfers in good faith merely because they lacked a contractual relationship with the

Debtors, and therefore – in the bankruptcy court's subjective view – were unlikely to know of the

underlying wrongdoing. (Opinion at pp. 24-25). The mere fact that there was no contractual

relationship between Defendants and the Debtors, however, hardly establishes that Defendants

were, in fact, without knowledge or notice of the underlying fraud. More importantly, it simply

cannot be argued that this fact alone sufficiently establishes that a reasonable person in

Defendants' shoes would not have been placed on sufficient notice of the underlying fraud. To

the contrary, it is certainly possible (and discovery may very well show) that Defendants were

aware of the underlying fraud, or should have been aware of the underlying fraud, on account of,

*inter alia*, the alleged fact that each Defendant received multiple payments from a single source

and a single account in the form of checks drawn on the account of and authorized by Image

24

Masters, rather than the Homeowners, as well as multiple changes of address forms directing that all correspondence for each Homeowner be forwarded to a P.O. Box in Oley, Pennsylvania, "c/o OPFM, Inc." (Comp. at ¶62). *Cf., In re Burry*, 309 B.R. 130, 136 (Bankr. E.D. Pa. 2004) (noting that on the issue of the bank/defendant's good faith, "the trustee might have made something of the fact that half of the checks came from someone other than the obligor on the loan.").

Regardless, like its conclusion as to reasonably equivalent value, the bankruptcy court's conclusion as to good faith was not only wrong as a matter of law, it also constituted premature fact-finding which was simply not supported by the facts.

To support its misguided burden shifting and premature fact-finding, the bankruptcy court relied exclusively on the non-binding decisions of other jurisdictions, and in particular, the Second Circuit Court of Appeals decision in *Sharp Int'l Corp. v. State Street Bank and Trust Co.* (*In re Sharp Int'l Corp.*), 403 F.3d 43 (2d Cir. 2005). However, as even federal courts in New York have recognized, the decision in *Sharp* is ***inapplicable*** to claims brought pursuant to §548 because the court in *Sharp* only considered a claim brought pursuant to New York's fraudulent conveyance statute and did not consider claims under §548 of the Bankruptcy Code. *See e.g., Gredd v. Bear, Stearns Securities Corp.*, 310 B.R. 500, 507-509 (Bankr. S.D. NY 2002) (distinguishing *Sharp* and holding that under §548, a plaintiff need not allege that defendants participated in the underlying fraud). As these courts recognized, the New York statute at issue in *Sharp* differs from §548 (and PUFTA) in one significant regard:  under the New York fraudulent conveyance statute, "good faith" is an integral part of the "fair consideration" factor, and the plaintiff bears the burden of proving the lack of good faith. *Id.; see also Silverman v.*

*Actrade Capital, Inc.,* 337 B.R. 791, 804-806 (Bankr. S.D. N.Y. 2005). As well-settled and outlined above, under §548 and PUFTA, however, good faith is an affirmative defense for which Defendants bear the burden of proof. As such, *Sharp* is inapplicable to claims brought under §548 and PUFTA.

This Court should, indeed must disregard the bankruptcy court's reliance on and adoption of *Sharp*, because that decision involved only that court's interpretation of the New York statute and not §548 or PUFTA. It is indisputable that neither §548 nor PUFTA require an allegation or showing that a transferee somehow knowingly participated in the underlying fraud of the debtors. The bankruptcy court's holding to the contrary requires reversal.

## II.    THE BANKRUPTCY COURT MISAPPLIED AND MISCONSTRUED RULE 9(b) AS REQUIRING PLAINTIFF TO ALLEGE FRAUDULENT INTENT WITH PARTICULARITY AND TO ALLEGE AND PROVE THAT DEFENDANTS WERE KNOWINGLY IN ON THE UNDERLYING PONZI SCHEME.

### A.    The Bankruptcy Court Erroneously Concluded that Rule 9(b) Requires the Trustee to Allege Fraudulent Intent with Particularity and to Allege Defendants' Knowledge and/or Participation in the Underlying Fraud.

In dismissing the Trustee's actual fraudulent conveyance claims pursuant to Rule 9(b), the bankruptcy court erroneously imposed a heightened pleading burden on Plaintiff that is unsupported by case law, the applicable fraudulent conveyance statutes or Rule 9(b) itself. The bankruptcy court repeatedly but mistakenly held that the Trustee must allege that "Defendants (1) knew of, or were in any way connected to, the Ponzi scheme conducted by Snyder and orchestrated by Debtors or (2) committed any wrongdoing when they accepted the homeowners' regular monthly payments from Image Masters." (*See e.g.*, Opinion at p. 37). Neither case law, the applicable statutes, nor Rule 9(b) require that the Trustee allege or prove that Defendants

knew of or were in any way connected to the underlying Ponzi scheme. The applicable statutes simply require the allegation that ***Debtors*** acted with intent to defraud ***a creditor***, and Rule 9(b) requires only that the requisite intent be alleged generally. As such, the Trustee's actual fraudulent conveyance claims are not subject to dismissal pursuant to Rule 9(b).

The bankruptcy court's conclusion is belied by the plain language of the applicable provisions of the Bankruptcy Code and PUFTA. As is clear from the language of §548 and PUFTA, a trustee need not allege fraud as to each defendant/transferee or as to each challenged transfer but need only allege that the ***Debtors*** held the actual intent to defraud ***a creditor***. Section 548 simply requires the challenged transfer be made by the "debtor" with "actual intent to hinder, delay, or defraud ***any entity*** . . . ." (emphasis added). Similarly, §5104(a) of PUFTA requires the transfer to be made by the "debtor" "with actual intent to hinder, delay or defraud ***any creditor*** . . ." (emphasis added). It is indisputable that neither §548 nor PUFTA requires an allegation or showing that a transferee/defendant somehow knowingly participated in the underlying fraud of the debtors. Here, the Trustee has specifically alleged that the Debtors acted with the requisite intent to defraud creditors, and described in great detail the underlying Ponzi scheme which supported that intent. (*See* Chase Comp. at ¶¶30-53, 56-59, 70, and 83; ABN Complaint at ¶¶34-57, 60-63, 75 and 90). Nothing more was required.

The bankruptcy court also erroneously held that pursuant to Rule 9(b), the Trustee was obligated to "allege with particularity that the debtor made the transfer with actual intent to hinder, delay or defraud a creditor." (Opinion at p. 28). The plain language of Rule 9(b) actually provides just the opposite with regard to intent. Rule 9(b) expressly provides that "intent" can be averred generally. Rule 9(b) states in its entirety: "In all averments of fraud or mistake, the

circumstances constituting fraud or mistake shall be stated with particularity. ***Malice, intent, knowledge and other conditions of mind of a person may be averred generally*** ." Fed.R.Civ.P. 9(b) (emphasis added). The particularity requirement of Rule 9(b) applies only to the facts underlying the fraudulent conduct. Here, that fraudulent conduct was the operation of a Ponzi scheme by Snyder, and by imputation, the Debtors. The Trustee has alleged in great detail and with particularity the facts underlying and supporting that Ponzi scheme. By its own plain language, however, Rule 9(b) allows fraudulent intent to be alleged generally. As such, the Trustee's allegation that the transfers were made "with actual intent to hinder" is adequate. Indeed, numerous courts have found a trustee's mere allegation that the transfers were made with "actual intent to hinder, delay or defraud" is sufficient. *See e.g., United States v. Rocky Mountain Holdings, Inc.*, 2009 WL 564437, *5 (E.D. Pa. March 4, 2009) ("Accordingly, a ***plaintiff need not plead intent*** with the same particularity required of the circumstances constituting the alleged fraudulent conveyances." (emphasis added)); *Buckley*, 2008 WL 4239120, at *9 (holding that the trustee's allegation that the transfers were made with "actual intent to hinder, delay or defraud" was sufficient to overcome a motion to dismiss); *Stanziale v. Pepper Hamilton LLP (In re Student Finance Corp.*), 335 B.R. 539, 553 (D. Del. 2005) (finding that under PUFTA, a trustee's complaint sufficiently alleged an actual fraud claim by alleging a transfer "with an actual intent to defraud . . . .").

In reaching its decision, the bankruptcy court again ignored the well-settled law of this Circuit cited in the Trustee's Opposition and instead relied almost exclusively on the non-binding decisions of courts outside of the Third Circuit to impose an obligation and burden on the Trustee to allege and prove some kind of fraudulent conduct on the part of Defendants that

28

purportedly arises under Rule 9(b). The bankruptcy court's reliance on these non-binding decisions is misplaced.

For example, the bankruptcy court's reliance on *In re Carrozzella & Richardson*, 386 B.R. 480 (D. Conn. 2002) and *Balaber-Strauss v. Sixty-Five Brokers*, 256 B.R. 664 (Bankr. S.D. N.Y. 2000), to support its Rule 9(b) dismissal is misplaced because neither case even considered Rule 9(b). Moreover, *Carrozzella* involved a decision following a trial on the merits, involved the interpretation of Connecticut's fraudulent conveyance statute, and only addressed a claim for constructive fraud (not actual fraud). Indeed, the court in *Balaber* held that a plaintiff meets her burden of alleging actual intent by alleging the existence of an underlying Ponzi scheme. *Id.* at 676. Lastly, for the reasons discussed above, ***see discussion supra*** at I.(D), the bankruptcy court's reliance on *Sharp* should be rejected outright because it has no bearing on claims brought under §548 (or PUFTA), but rather involved application of New York's statute which – unlike §548 and PUFTA – placed the burden of demonstrating lack of good faith on the plaintiff. Because none of these decisions has any bearing on the Trustee's obligation to plead fraudulent intent under §548 or PUFTA, and the bankruptcy court's reliance on them is misplaced.

Not only are these non-binding decisions inapplicable to the Trustee's Rule 9(b) pleading obligations, but the bankruptcy court misstates their holdings. In its decision, the bankruptcy court incorrectly states that these cases "hold that the general fraudulent nature of the Ponzi scheme does not provide the requisite intent to support a cause of action for an actually fraudulent transfer." (Opinion at p. 36). Significantly, these cases did not hold that the plaintiffs had failed to sufficiently allege the requisite fraudulent intent. Indeed, as noted above, in *Balaber*, the court specifically recognized that a plaintiff's allegation of an underlying Ponzi

scheme was sufficient to meet a plaintiff's pleading requirement of actual intent. *Balaber*, 256

B.R. at 676.  Contrary to the bankruptcy court's conclusion, these cases dealt solely with the

issue of reasonably equivalent value[7] – not the intent requirement.  As such, they have no bearing

on the issue of actual intent, and the bankruptcy court's reliance on them requires reversal.

**B.**      **The Bankruptcy Court Disregarded Numerous Decisions Holding that a Plaintiff's Allegation of a Ponzi Scheme Is Sufficient to Meet Actual Fraud Pleading Requirements.**

In reaching its otherwise unsupportable decision with regard to Rule 9(b) requirements,

the bankruptcy court also disregarded the numerous decisions, including that of Judge Paul S.

Diamond in *Hecht v. Malvern Preparatory School*, Civ. A. No. 10-1374 (E.D. Pa. May, 26,

2010)[8] decided last week, that have held that a trustee sufficiently pleads the requisite fraudulent

intent for a §548 claim where she pleads the existence of an underlying Ponzi scheme. *Id.* at pp.

9-10; *see also Liebersohn v. Campus Crusade for Christ, Inc. (In re CF Foods, L.P.)*, 280 B.R.

103, 110-111 (Bankr. E.D. Pa. 2002) (stating "[n]umerous courts have decided that a debtor's

actual intent to hinder, delay or defraud creditors may be inferred from the Debtor's active

participation in a Ponzi scheme . . ." and a "guilty plea or criminal conviction of the perpetrator

of the Ponzi scheme provides evidence of actual fraudulent intent."); *Santa Barbara Capital

Management v. Neilson (In re Slatkin)*, 525 F.3d 805, 814 (9th Cir. 2008) ("We now hold that a

debtor's admission, through guilty pleas and a plea agreement . . . that he operated a Ponzi

scheme . . . conclusively establishes the debtor's fraudulent intent under 11 U.S.C. §548(a)(1(A) .

---

[7]      As discussed above, *see* **discussion** *supra* I.(C), the holdings of these non-binding decisions with regard to reasonably equivalent value are in direct conflict with the standard applied by courts in the Third Circuit, *i.e.,* the totality of the circumstances standard.

[8]      A copy of Judge Diamond's recent decision is attached hereto as Exhibit A.

. . ."); *Bayou Superfund, LLC v. WAM Long/Short Fund II, L.P. (In re Bayou Group, LLC)*, 362

B.R. 624, 633 (Bankr. S.D. N.Y. 2007); *Perkins v. Crown Fin., LLC (In re Int'l Mgmt. Assocs.*

*LLC)*, 2007 Bankr. LEXIS 1566, at *8 (Bankr. N.D. Ga. Mar. 6, 2007) ("As to whether the

complaint sufficiently sets forth allegations of fraud as required by the actual fraudulent transfer

statutes, the Court finds that, for purposes of Rule 8 and Rule 9(b), the Trustee's allegations that

'Wright operated IMA and IMA Advisory as a classic Ponzi scheme' (Complaint, P 21) and that

the transfer to Crown from IMA 'was made in furtherance of Wright's operation of the IMA

Ponzi scheme' (Complaint, PP 34, 48) state a claim under §548(a)(1)(A) . . . with sufficient

particularity."); *Perkins v. Parise (In re Global Trading Investments LLC)*, 2006 WL 3040918, at

*6-7 (Bankr. D. N.J. Oct. 25, 2006);  *Rieser v. Hayslip, et al. (In re Canyon Sys. Corp.)*, 343 B.R.

615, 636-37 (Bankr. S.D. Ohio 2006) (holding that "[a]ctual intent to hinder, delay or defraud

may be established as a matter of law in cases in which the debtor runs a Ponzi scheme . . . .");

*Quilling v. Stark*, 2006 WL 1683442, at *6 (N.D. Tex. June 19, 2006) ("The existence of a Ponzi

scheme as alleged in the complaint makes the transfer of investor funds fraudulent as a matter of

law."); *Terry v. June*, 432 F. Supp.2d 635, 639 (W.D. Va. 2006) ("[C]ourts have widely found

that Ponzi scheme operators necessarily act with actual intent to defraud creditors due to the very

nature of their schemes."); *Bauman v. Bliese, et al. (In re McCarn's All-state Fin., Inc.)*, 326

B.R. 843, 850 (Bankr. M.D. Fla. 2005) ("Bankruptcy courts nationwide have recognized that

establishing the existence of a Ponzi scheme is sufficient to prove a Debtor's actual intent to

defraud."); *Cuthill v. Kime (In re Evergreen Security, Ltd.)*, 319 B.R. 245, 253 (Bankr. M.D. Fla.

2003); *Gredd v. Bear, Stearns Securities Corp. (In re Manhattan Investment Fund Ltd.)*, 310

B.R. 500, 509-10 (Bankr. S.D. N.Y. 2002); *Balaber-Strauss v. Sixty-Five Brokers (In re*

31

*Churchill Mortgage Investment Corp.*), 256 B.R. 664, 676 (Bankr. S.D. NY 2000); *Jobin v. Lalan* (*In re M&L Business Machine Co., Inc.*), 160 B.R. 851, 857 (Bankr. D. Colo. 1993) ("[I]n a Ponzi scheme the only inference that a court can make is that the Debtor had the requisite intent to hinder, delay or defraud under §548(a)(1)."). The bankruptcy court inexplicably ignores these cases and instead relies on the same non-binding decisions outside of the Third Circuit described and distinguished above.

## III.    THE HOMEOWNERS ARE NOT NECESSARY PARTIES

### A.    Legal Standard Under Rule 19

Federal Rule of Civil Procedure 19 provides for the mandatory joinder of absent parties that fall within limited categories. The moving party bears the burden of demonstrating that an absent party is necessary and indispensable within the scope of Rule 19. *North American Specialty Insurance Co. v. Chichester School Dist.*, No. Civ. A. 99-2394, 2000 WL 1052055, *23 (E.D. Pa. July 20, 2000). The court must determine whether the absent party is "necessary" or, in other words, falls within any of the categories of Rule 19(a). A party is "necessary" under Rule 19(a) only if the party's presence is needed to accord "complete relief amongst existing parties," Rule 19(a)(1)(A), or if the absent party "claims an interest" in the "subject of the action" ***and*** the failure to join that party would either "impair or impede the [absent party's] ability to protect the interest," Rule 19(a)(1)(B)(i), or would "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations," Rule 19(a)(1)(B)(ii).

It is well-settled that an absent party is not necessary simply because joinder would be convenient, or because two claims share common facts, for that would render the distinction between permissive joinder under Rule 20, and joinder under Rule 19 "practically meaningless."

*Field v. Volkswagenwerk AG*, 626 F.2d 293, 301 (3d Cir. 1980). As described below, in their Motions Defendants failed to establish anything more than the speculative potential convenience of joining the Homeowners to this action. Therefore, the Homeowners are not necessary to the Trustee's avoidance action. Moreover, the only parties necessary to fraudulent transfer claims are the transferor and transferees. Neither Defendants nor the bankruptcy court have provided any case law to the contrary.

**B.    As a Matter of Law, the Only Parties Necessary to Fraudulent Transfer Claims Are the Transferor and Transferees.**

As the plain language of §§ 548 and 550 of the Bankruptcy Code make clear, the only proper parties to a fraudulent conveyance action are the trustee and the transferees. For example, §550 provides that "the ***trustee*** may recover . . . from the initial ***transferee*** . . . ." §550(a)(1) (emphasis added). As such, the only proper parties to the Trustee's claims here are the Trustee and the transferees, *i.e*, Defendants. Neither the Defendants nor the bankruptcy court has cited to a single case holding to the contrary. Indeed, courts have recognized that the only proper parties to a fraudulent conveyance claim are the debtors and transferees. *See e.g., Trenwick America Litigation Trust v. Ernst & Young, LLP*, 906 A.2d 168, 203 (Del. Ch. 2006) (finding that "the only proper defendants in a fraudulent conveyance action under federal bankruptcy law or Delaware law are the transferor and any transferees."); *see also Holber v. Jacobs* (*In re Jacobs*), 401 B.R. 161, 175 n. 18 (Bankr. E.D. Pa. 2009) (finding the only necessary parties to the trustee's fraudulent transfer claims were the trustee and the transferees and noting the absence of any case law to the contrary).

33

**C.    The Bankruptcy Court Failed to Determine Whether the Homeowners Have Asserted the Requisite Interest in the Subject of this Action; They Have Not.**

The bankruptcy court erroneously concluded that the Homeowners were necessary parties under Rule 19(a)(1)(B) before making the initial determination as to whether the Homeowners claim "a legally protected interest relating to the subject matter of the action." *United States v. Payment Processing Center, LLC*, 2006 WL 2990392, *4 (E.D. Pa. Oct. 18, 2006). The bankruptcy court simply assumed, without any discussion, that the Homeowners made such a claim in *Jones*.[9]  Looking to the Defendants' own representations to the District Court in *Jones*,[10] however, these Defendants represented that the Homeowners had no interest in litigating against the Debtors: "Plaintiffs [Homeowners] have repeatedly asserted that the presence of the Snyder Companies is not important to this litigation." (Defendants' Opposition to Transfer Motion, Ex. B, at 6).  As Defendants themselves described it, the Homeowners have not claimed a "legally protected interest relating to the subject matter" of this action.  Because the Homeowners have not asserted such an interest, the bankruptcy court's conclusion was erroneous.

---

[9]      Although relying on the Homeowners' purported claims in *Jones*, the bankruptcy court failed to consider that *Jones* involved only the claims of Homeowner Jones – not the hundreds of other Homeowners – and did not involve all of the Defendants in these actions. *Jones*, 551 F. Supp.2d at 404.   Further, the District Court eventually dismissed all of the claims against those named Defendants by decision dated April 10, 2008.  *Id.*

[10]      As discussed below, *see discussion supra* III(F), in *Jones*, a homeowner plaintiff sought to transfer his claims to the bankruptcy court.  The Defendants, however, successfully opposed the homeowner's motion by arguing that the homeowner's claims were not related to the Trustee's claims.  The Homeowners/Plaintiffs' Expedited Motion for Transfer to Bankruptcy Court and Plaintiffs' Reply in Support of Transfer to Bankruptcy Court (collectively the "Homeowners' Transfer Motion") and the Defendants' Opposition to Plaintiffs' Expedited Motion for Transfer  to Bankruptcy Court ("Defendants' Opposition to Transfer Motion") are attached to the Trustee's Opposition as Exhibits A and B.  Citations in this brief to "Exhibits" shall be to those exhibits attached to the Trustee's Opposition.

Moreover, "[u]nder Fed.R.Civ.P. 19(a)(1)(B), a party is only 'necessary' if it has a legally protected interest, and not merely a financial interest." *Liberty Mutual Insurance Co. v. Treesdale, Inc.*, 419 F.3d 216, 230 (3d Cir. 2005) (quoting *Spring-Ford Area School Dist. v. Genesis Ins. Co.*, 158 F. Supp.2d 476, 483 (E.D. Pa. 2001)); *see also Coregis Insurance Co. v. Wheeler*, 180 F.R.D. 280, 283 (E.D. Pa. 1998) (stating that the absent party's "interest relating to the subject of the action must be legally protected, and must be more than a mere financial interest."). Even if it could be argued that the hundreds of Homeowners have claimed an interest in the subject of this action (they have not), that interest, as the bankruptcy court and the Defendants themselves have described it, is nothing more than a financial interest. The bankruptcy court concluded that if it were to rule in favor of the Trustee on her avoidance claims, the Homeowners will be faced with an increase in their financial obligations to the Defendants. "This asserted interest can only be described as a financial one – an interest not sufficient to meet the threshold requirement of Rule 19(a)(2)." *Southeastern Pennsylvania Transportation Authority v. Pennsylvania Public Utility Commission*, 210 F. Supp.2d 689, 718 (E.D. Pa. 2002) (finding absent parties were not necessary because their only interest was financial).

Additionally, the "subject matter" of this action is the estate property fraudulently transferred by the Debtors directly to the Defendants. According to Defendants, the Homeowners only asserted claims for the moneys that Debtors purportedly did *not* transfer to the Defendants. For example, at page 3 of the Countrywide Motion, Defendants state: "the Borrowers . . . seek damages for payments they made to Image Masters *but which Image Masters never paid to Defendants*." (emphasis added) (*see also* Countrywide Motion at ¶3 (stating "which Image Masters *did not transfer* to the Defendants . . . .") (emphasis added)). In

35

this case, as the Defendants correctly concede, the Trustee seeks to "avoid payments *made by Image Masters to the Defendants* . . . ." (*Id.* at p. 3) (emphasis added).  According to Defendants, the Homeowners have at most claimed an interest in moneys the Debtors *did not forward* to the Defendants,[11] whereas the Trustee seeks recovery of estate property (or its value) that the Debtors *did forward* to Defendants.  Thus, Defendants have failed to show and the bankruptcy court failed to consider whether the Homeowners have even asserted the requisite interest in the subject matter of this action.  Indeed, they have not.

> **D.    The Trustee's Success in this Matter Will Not and Cannot Have the Requisite Preclusive Effect on the Homeowners' Claims or Defenses to Require their Joinder.**

The bankruptcy court erroneously concluded that the Homeowners must be joined pursuant to Rule 19(a)(1)(B)(i) because the Homeowners' interests "might" be prejudiced in the absence of their inclusion in this adversary proceeding.  Rule 19(a)(1)(B)(i), however, requires Defendants to show that a decision in favor of the Trustee would "impair or impede" the Homeowners' ability to protect their interest in the subject matter of this litigation, and that a decision in favor of the Trustee in this matter will have a "direct and immediate" effect on the Homeowners' claims.  *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 411 (3d Cir. 1993).   To make such a showing, Defendants must demonstrate "that some outcome of the federal case that is *reasonably likely* can *preclude* the absent party with respect to an issue material to the absent party's rights or duties *under standard principles governing the effect of*

---

[11]      During oral argument on the Homeowners' Motion to Transfer, the Homeowners' counsel described the relief sought the same way, stating "[w]e're seeking declaratory relief that the payments made to Image Masters *which they failed to send on to these various defendants* were good payments because of the common law *de facto* agency relationship." (Ex. D, Tr. at 58) (emphasis added).

***prior judgments***." *Id.* at 409 (emphasis added).  In *Janney,* the Court noted that under Pennsylvania law, a party may only be precluded from relitigating an issue if the issues are identical, the parties are in privity and the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue in a prior action.  *Id.* at 399 n. 12.

The Defendants in their Motions and the bankruptcy court in its decision fail to demonstrate how a decision in the Trustee's favor in this case is "reasonably likely" to have a "direct and immediate" preclusive effect on the Homeowners' interests.  Indeed, there is no likelihood or even any possibility that a decision in the Trustee's favor could preclude the absent Homeowners with respect to the Homeowners' rights or duties "under standard principles governing the effect of prior judgments."

The bankruptcy court concluded that the Homeowners "might" face future claims by the Defendants for amounts the Trustee recovers in this matter.  The bankruptcy court's assumption (even if true) that the Defendants might seek recourse from the Homeowners by way of indemnification, contribution or by modifying the status of the Homeowners' mortgage loan accounts, however, does not make the Homeowners necessary parties to this action.  It is well-settled that the existence of a claim for indemnification or contribution against an absent party does not make that party a necessary party. *Janney, supra*, at 411 (holding that a defendant's claim of contribution or indemnity against an absent party does not make that party necessary)*; Bank of America National Trust & Savings Assoc. v. Hotel Rittenhouse Assoc.*, 844 F.2d 1050, 1054 (3d Cir. 1987) (stating "[a] defendant's right to contribution or indemnity from an absent non-diverse party does not render that absentee indispensable pursuant to Rule 19.").  Indeed, a recent decision of the Bankruptcy Court for the District of Delaware, places in question whether

a defendant in a fraudulent transfer case may seek contribution or subrogation from another party for the value of estate property it had been ordered to return. In *Amp'd Mobile, Inc. v. Adderton (In re Amp'd Mobile, Inc.)*, 2009 WL 1025952 (Bankr. D. Del. Apr. 16, 2009), the bankruptcy court held that a defendant found liable on a fraudulent transfer claim is barred as a matter of law from seeking to pass on its liability to a third party. As that court held, "there can be no contribution or subordination claim, equitable or statutory, following recovery on a fraudulent conveyance claim. Second, there can be no contribution or subordination right resulting from a recovery by Amp'd in the form of a disallowance of claim." *Id.* at *5-*6. Regardless, any action Defendants ***may*** take subsequent to a decision in this matter does not meet the "direct and immediate" standard set by *Janney*. The requisite "direct and immediate" effect must flow from a decision in favor of the Trustee ***in this matter***, not some potential subsequent action to be taken by the Defendants.

If the Trustee is successful in this case, the judgment in favor of the Trustee will have no preclusive effect on the Homeowners' potential claims or defenses against these same Defendants, nor will it "directly and immediately" impair or impede the Homeowners' ability to defend themselves in any actions by the Defendants. Accordingly, the Homeowners are not necessary parties.

### E.    The Defendants Do Not Face Double or Inconsistent Obligations.

The bankruptcy court also erroneously concluded that the Defendants ***and the Homeowners*** faced the possibility of double or inconsistent obligations simply because two courts might possibly interpret the Homeowners' loan documents differently. (Opinion at p. 42). First, the bankruptcy court's conclusion was clearly erroneous because Rule 19 does not require

38

or permit consideration of whether non-parties face double or inconsistent obligations. Rather, its scope is limited to that of existing parties. *See* Rule 19(a)(1)(B)(ii) (limiting consideration to "existing" parties).

Contrary to the bankruptcy court's erroneous conclusion, disposition of this action in the Homeowners' absence will not subject Defendants "to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations . . . ." Rule 19(a)(1)(B)(ii). The bankruptcy court concluded that the Defendants face the potential of inconsistent interpretation of the Homeowners' loan documents notwithstanding the fact that (1) the *Jones* matter has been dismissed in its entirety, *see Jones v. ABN Amro Mortgage Group, Inc.*, 551 F. Supp.2d 400 (E.D. Pa. 2008), *affd.*, 2010 WL 2038840 (3d Cir. May 25, 2010); (2) the *Jones* matter ultimately involved the claims of only a few of the Homeowners against some of the Defendants, *see **supra** n. 9*; and (3) most notably and as admitted by Defendants, the causes of action asserted and the relief sought by the Homeowners are different than those asserted and sought by the Trustee here.

The bankruptcy court failed to even consider the well-settled law that there can be no likelihood of double or inconsistent obligations where the causes of action asserted or the relief sought in the two lawsuits are different. "Where two suits arising from the same incident involve different causes of action, defendants are not faced with the potential for double liability because separate suits have different consequences and different measures of damages." *Delgado v. Plaza Las Americas, Inc.*, 139 F.3d 1, 3 (1st Cir. 1998); *see also Torcise v. Community Bank of Homestead (In re Torcise)*, 116 F.3d 860, 866 (11th Cir. 1997); *North American,* 2000 WL 1052055, at *25 (finding a nonparty was not a necessary party where its claims against the defendant involved a different contract than that at issue in present case); *DCC Operating, Inc. v.*

*Siaca (In re Olympic Mills Corp.)*, 477 F.3d 1, 9 (1st Cir. 2007) (finding an absent party was not a necessary party where its claims against defendant in different action were for breach of contract and the claims asserted in the adversary proceeding were for fraudulent conveyances and other related causes of action); *Wieboldt Stores, Inc. v. Schottenstein*, 94 B.R. 488, 512 (Bankr. N.D. Ill. 1988) (holding non-parties to adversary proceeding were not necessary parties because their potential claims were not and could not be the same as the trustee's claims).

In *Torcise*, the Eleventh Circuit Court of Appeals faced a similar set of claims as those at issue here, and disposed of the defendant's Rule 19 motion because there was no likelihood of double or inconsistent obligations. In *Torcise*, the unsecured creditors committee of Chapter 11 debtors brought fraudulent conveyance claims against a bank. 116 F.3d at 862. The committee sought to recoup, for the benefit of the bankrupt estates, monies that the debtors fraudulently transferred to the bank. *Id.* at 864. The bank sought to join one of the debtor's secured creditors which had filed suit in district court against the bank and others. *Id.* In the district court action, the plaintiff asserted tort and conspiracy claims against the bank arising out of the same facts as those involved in the bankruptcy action. *Id.* The bank argued that the absent party was necessary to prevent the substantial risk that the bank would incur double, multiple or otherwise inconsistent obligations. *Id.* The Eleventh Circuit affirmed the bankruptcy court's denial of the bank's Rule 19 motion because "the causes of action in the two suits [were] different . . . There is no substantial risk to Bank of incurring multiple, inconsistent obligations as a result of absentee Bel-Bel's alleged interest." *Id.* at 866-867.

Similarly, there is no likelihood of double or inconsistent "obligations" here because the causes of action asserted and remedies sought in the two actions are different. Indeed, in their

papers below, Defendants repeatedly conceded (as they must) that the Homeowners assert

different causes of action and seek different damages than those asserted and sought by the

Trustee here.  In fact, during the oral argument on the Homeowners' motion to transfer,

Defendants' counsel stated:

> I think the presentations of Mr. Willner [Homeowners' counsel]
> and Mr. Kotler [counsel for the Trustee] have made very plain that
> what is before Your Honor is very distinct from the claims which
> have been described as preference or fraudulent conveyance claims
> the trustee may or may not bring at some point in Bankruptcy
> Court against some defendants, maybe all defendants . . . They are
> two very distinct things.

(Ex. D, Tr. at 61).  Thus, by Defendants' own admission, the Homeowners' claims and the

Trustee's claims are "distinct."  As such, there can be no likelihood of double or inconsistent

obligations.

In a recent decision of Judge Frank in *Holber v. Jacobs (In re Jacobs)*, 401 B.R. 161, 175

n. 18 (Bankr. E.D. Pa. Jan. 21, 2009), the court effectively and correctly closed the door on any

argument that an avoidance action could be dismissed for failure to join an absent party on the

basis of the possibility of double or inconsistent obligations.  Noting the absence of "any case

law in which a court has dismissed a transfer avoidance proceeding in order to protect a

defendant-transfer-beneficiary under §550(a) of the Code from the risk of multiple liability," the

court held, "Given the nature of the Trustee's §§548, 550 claims, it is difficult to comprehend

such a possibility [inconsistent obligations or double recovery]."  *Id.*  Neither the Defendants

below, nor the bankruptcy court have cited any case law to the contrary.  *See also Trenwick*, 906

A.2d at 203 (holding "the only proper defendants in a fraudulent conveyance action under federal

bankruptcy law or Delaware law are the transferor and any transferees.").

The absence of the Homeowners does not create the possibility that Defendants will incur double or inconsistent obligations for the simple reason that only the Trustee can seek to avoid and recover fraudulent transfers. The Homeowners have neither asserted these same claims, nor can they. *See Wieboldt*, 94 B.R. at 512 (stating that "[o]nly a trustee in bankruptcy or debtor-in-possession can request relief under the fraudulent conveyance provisions in the Bankruptcy Code."). Because the Homeowners could not obtain the relief that the Trustee seeks in her Complaints here, the Defendants do not face the possibility of double or inconsistent obligations.

In addition to their own binding admissions in this matter and in *Jones*,[12] Defendants have also failed to demonstrate the "substantial risk of incurring double, multiple, or otherwise inconsistent ***obligations*** . . . ." Rule 19(a)(1)(B)(ii) (emphasis added). It is well-settled that inconsistent obligations are not the same as inconsistent adjudications or results. *See e.g., Field v. Volkswagenwerk AG*, 626 F.2d 293, 301-02 (3d Cir. 1980); *Delgado*, 139 F.3d at 3; *Micheel v. Haralson*, 586 F. Supp. 169, 171 (E.D. Pa. 1983). Inconsistent obligations arise only when a party risks facing conflicting judgments, so that compliance with one judgment would conflict with the other. *Delgado*, 139 F.3d at 3. Inconsistent adjudications or results, on the other hand, are those in which a party prevails on one theory of liability in one case, and then fails on that

---

[12]    In support of their motion to transfer their claims to the bankruptcy court, the Homeowners in *Jones* actually made this very argument on behalf of these same Defendants, arguing that the Defendants faced "double, multiple or inconsistent obligations" on account of the *Jones* action and the Trustee's avoidance claims. (Defendants' Opposition to Transfer Motion, Ex. B, at 16). When it was in their interest to keep the Homeowners' claims against them from adjudication in the bankruptcy court, Defendants took the position that "this argument is based on pure speculation about possible judgments, the scope of such judgments, and their impact on Defendants – and for that reason alone the Court should reject it." (*Id.*). The Trustee agrees. Defendants are estopped from now changing their position and arguing that they face double and/or inconsistent obligations when they rejected this same argument made by the Homeowners in *Jones*.

42

same theory, and even on the same or similar facts, in another case against another party. *Id.*
While inconsistent as a matter of logic, these judgments would not necessarily subject the party
to inconsistent legal obligations. *See Field*, 626 F.2d at 301-02 (stating "Nor . . . does the
possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a
matter of logic . . . trigger the application of Rule 19."); *Delgado*, 139 F.3d at 3 ("[T]he mere
possibility of inconsistent results in separate actions does not make the plaintiff in each action a
necessary party to the other."); *Micheel*, 586 F. Supp. at 171 ("If only the possibility of diverse
holdings as to liability mandates joinder under Rule 19, then the difference between Rule 19 and
Rule 20 would be non-existent."); *Bedel v. Thompson*, 103 F.R.D. 78, 81 (S.D. Ohio 1984)
("Even though the results . . . may be, to a certain extent, logically inconsistent, Rule 19 does not
speak of inconsistent 'results.'  Rather, it speaks in terms of inconsistent 'obligations.'").  Thus,
for the Homeowners to be necessary parties, Defendants were required to identify the substantial
risk of an inconsistent obligation as opposed to an inconsistent adjudication or result.  The
Defendants in their Motions and the bankruptcy court in its decision, however, have articulated
nothing more than the possibility of inconsistent results and not the requisite inconsistent
obligations, which does not necessitate joinder of all of the parties into one action pursuant to
Rule 19.[13]

---

[13]    The Homeowners are certainly not necessary parties to the Trustee's claims
involving the Debtors' fraudulent transfers of the money stolen from the Mortgage Participation
Investors as such claims neither involve the Homeowners' purported interests nor require
consideration and/or interpretation of the Homeowners' loan documents.  Thus, to the extent the
Trustee is permitted to pursue only her claims involving the fraudulent transfers of the money
stolen from the Mortgage Participation Investors, these claims do no require the inclusion of the
Homeowners.

**F.    The Defendants' Joinder Argument Should Have Been Rejected Because It Contradicted the Argument These Same Defendants Successfully Made in *Jones*.**

The bankruptcy court also erroneously concluded that Defendants were not judicially estopped from making their joinder argument by concluding that Defendants' position was neither contrary to the position they successfully took before the District Court in *Jones* nor made in bad faith. Respectfully, the bankruptcy court erred on this point.

Courts in the Third Circuit have long applied judicial estoppel to preclude a party from changing its positions before a court. *See Scarano v. Central R. Co. of New Jersey*, 203 F.2d 510 (3d Cir. 1953). Judicial estoppel precludes a party from assuming a position that is inconsistent with a prior position taken either in the same or another proceeding. *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 419 (3d Cir. 1988). Judicial estoppel should be applied when as in this case: (1) a party against whom the doctrine is asserted has taken a position that is inconsistent with an earlier position taken by such party in either the same or a previous proceeding; and (2) the party asserted either or both of the inconsistent positions in bad faith. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 361 (3d Cir. 1996). The Third Circuit has held that the bad faith element is met where a court accepts the previous inconsistent position in reaching its decision. *Montrose Medical Group Participating Savings Plan v. Bulger*, 243 F.3d 773, 778, 782 (3d Cir. 2001) (finding the lack of bad faith because the earlier statements in the case were not accepted or adopted by the court); *Ryan,* 81 F.3d at 361 (stating that whether a party benefits from an inconsistent position is "relevant insofar as it evidences an intent to play fast and loose with the courts."); *see also Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 599 (6th Cir. 1982) (cited by Third Circuit in *Montrose* and stating "[j]udicial

44

estoppel addresses the incongruity of allowing a party to assert a position in one tribunal and the opposite in another tribunal. If the second tribunal adopted the party's inconsistent position, then at least one court has probably been misled."). Here, each of these elements is met.

In their Motions to Dismiss, Defendants argued that the bankruptcy court should mandate the joinder of the Homeowners who are or were plaintiffs in two related matters in the Eastern District of Pennsylvania: *Jones* and *Lorah*.[14] Remarkably, Defendants made this argument notwithstanding the fact that they actually opposed the Homeowners' attempt to transfer their claims to the bankruptcy court on the basis that they were ***not related*** to the Trustee's avoidance claims. Indeed, the Trustee could hardly make a better argument in opposition to the Defendants' Motions than these same Defendants successfully made themselves in opposition to the Homeowners' motion to transfer their claims to the bankruptcy court.

In *Jones*, the Homeowners filed a motion seeking transfer of their claims against Defendants to the bankruptcy court. In support of their motion, the Homeowners argued that in light of the Trustee's expected avoidance claims against these same Defendants, the Homeowners' claims were sufficiently related to the Trustee's claims such that they should be transferred to the bankruptcy court. Defendants successfully defeated the Homeowners' Transfer Motion by arguing that the Homeowners' claims were not even "remotely" related to the Trustee's claims and that a judgment in one case would have no bearing on the other. For example, the Defendants, in opposition to the Homeowners' motion, argued as follows:

- "The Snyder Companies are not named as defendants, and their bankruptcy estates would not be bound by any rulings or judgments in this case, and would

---

[14]    Defendants admitted that *Lorah* is virtually identical to *Jones*. (*See* Countrywide Motion at ¶¶20-21).

not be affected by the decisions made in the litigation . . . The resolution in this lawsuit of the parties' rights and obligations with respect to Defendants' mortgage loans will not impact the Snyder Companies' property or estate." (Defendants' Opposition to Transfer Motion, attached to the Trustee's Opposition as Ex. B, at 3).

- The Homeowners' claims have "just utterly no relationship whatsoever to the bankruptcy case." (Transcript of Oral Argument on Transfer Motion ("Tr.") at 63) (attached to the Trustee's Opposition as Exhibit D).

- The relief sought by the Homeowners "can't possibly have anything to do with the bankruptcy estate." (*Id.* at 62).

However, before the bankruptcy court, Defendants reversed course and boldly asserted that "there can be no doubt that the Borrowers' role, and their legal claims and rights, are as central to this proceeding as any of the present parties." (Countrywide Motion at ¶33).  Contrary to the bankruptcy court's conclusions, Defendants' two positions cannot be reconciled.  Because the Defendants' position in this matter is in direct conflict with the position they successfully asserted before the District Court in *Jones* and which the District Court relied in making its decision, they should have been judicially estopped from making their contradictory argument here.[15]  The bankruptcy court's finding to the contrary was error.

---

[15]    The District Court accepted the Defendants' argument and denied the Homeowners' Transfer Motion by order dated December 17, 2007.  A copy of the order is attached to the Trustee's Opposition as Exhibit C.

## **CONCLUSION**

In light of the foregoing facts and authorities, the bankruptcy court's orders should be reversed.

Respectfully submitted,

Dated: June 4, 2010

Steven M. Coren
Brian L. Watson
KAUFMAN, COREN & RESS, P.C.
1717 Arch Street, Suite 3710
Philadelphia, PA 19103
Tel: (215) 735-8700
Fax: (215) 735-5170

*Special Counsel for Lynn Feldman*
*Chapter 7 Trustee*

47

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| **LYNN E. FELDMAN, Chapter 7 Trustee** | : | |
| **of the Estate of Image Masters, Inc.,** *et al.,* | : | |
| | : | |
| **Plaintiff/Appellant,** | : | **CIVIL ACTION** |
| | : | **NO. 10-1141** |
| **v.** | : | |
| | : | |
| **CHASE HOME FINANCE,** *et al.,* | : | |
| | : | |
| **Defendants/Appellees.** | : | |
| | : | |

## <u>CERTIFICATE OF SERVICE</u>

I, Brian L. Watson, certify that on June 4, 2010, a true and correct copy of the foregoing

Trustee/Appellant's Brief in Support of Appeal was served on all persons below by electronic

and first class mail.

Joseph A. Dworetzky, Esquire
Hangley Aronchick Segal & Pudlin
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103
*Counsel for ABN Amro Mortgage Group, Inc., Principal Residential*
*Mortgage, and Citimortgage, Inc.*


Martin C. Bryce, Jr., Esquire
Ballard Spahr Andrews & Ingersoll, LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
*Counsel for Wells Fargo Bank, Countrywide Home Loans, Inc.,*
*Suntrust Bank and Wells Fargo Home Mortgage*

Joseph F. Yenouskas, Esquire
Goodwin Procter LLP
901 New York Avenue, NW
Washington, DC 20001
*Counsel for MoreEquity, Inc., First Horizon Home Loan Corporation, Bank of New York, Park Granada, LLC, and Countrywide Home Loans, Inc.*

Michael Cavendish, Esquire
Gunster, Yoakley & Stewart, P.A.
225 Water Street, Suite 1750
Jacksonville, FL 32202-5185
*Counsel for Florida Capital Bank Mortgage*

Steven J. Adams, Esquire
Stevens & Lee, P.C.
111 North Sixth Street
Reading, PA 19603
*Counsel for Florida Capital Bank Mortgage, M&T Mortgage Corp., Sovereign Bancorp, Inc. Wachovia Bank, N.A., and Provident Funding Associates, L.P.*

Nicholas Deenis, Esquire
Stradley, Ronon, Stevens & Young, LLP
Great Valley Corporate Center
30 Valley Stream Parkway
Malvern, PA 19355-1481
*Counsel for Federal National Mortgage Association*

John F. Kuntz, Esquire
830 Bergen Avenue
Jersey City, NJ 07306
*Counsel for Provident Savings Bank, d/b/a The Provident Bank*

David Franceski, Jr., Esquire
Stradley, Ronon, Stevens & Young, LLP
2600 One Commerce Square
Philadelphia, PA 19103
*Counsel for nBank Corp.*

2

Robert M. Greenbaum, Esquire
Smith Giacometti, LLC
270 West Lancaster Avenue
Building I
Malvern, PA 19355
*Counsel for Federal Home Loan Mortgage Corporation*

Kenton Hambrick, Esquire
Federal Home Loan Mortgage Corporation
8200 Jones Branch Drive
McLean, VA 22102
*Counsel for Federal Home Loan Mortgage Corporation*

Samuel W. Braver, Esquire
Buchanan, Ingersoll & Rooney
One Oxford Centre
301 Grant Street, 20th Floor
Pittsburgh, PA 15219-1410
*Counsel for National City Bank*

John B. Dempsey, Esquire
Daniel T. Brier, Esquire
Myers, Brier & Kelly
425 Spruce Street, Suite 200
Scranton, PA 18501
*Counsel for Chase Home Finance*

Bonnie R. Golub, Esquire
Weir & Partners, LLP
The Widener Bldg., Suite 500
1339 Chestnut Street
Philadelphia, PA 19107
*Counsel for Fifth Third Bank, GMAC Mortgage, Corp.
and Saxon Mortgage, Inc.*

  /s/ Brian L. Watson
Brian L. Watson